UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINUS HOLDING CORP., | |
| Plaintiff, | Civil Action No.: 17-3694 (FLW) |
| v. | |
| | **OPINION** |
| MARK LINE INDUSTRIES, LLC, *et. al.* | |
| Defendants. | |

**WOLFSON, United States District Judge**:

This matter comes before the Court on five separate motions to dismiss filed by (1) MCG Cane Bay, LLC ("MCG Cane Bay"); (2) BMB-MCG, LLC ("BMB-MCG"); (3) BMB Investments, LLC ("BMB Investments") and BOMA LC ("BOMA"); (4) Kory Reimann ("Mr. Reimann"); and (5) Mark Brown ("Mr. Brown") (cumulatively, the "moving defendants").[1] Specifically, these defendants seek to dismiss Plaintiff Linus Holding Corp.'s ("Plaintiff" or "Linus") First Amended Complaint pursuant to, *inter alia*, Federal Rule of Civil procedure 12(b)(2) for lack of personal jurisdiction. Plaintiff attempts to impose liability upon the moving defendants based on an alleged contractual breach of an agreement entered into with defendant Mark Line by claiming that the moving defendants are alter egos of Mark Line. For the reasons set forth below, the moving defendants' motions to dismiss are **GRANTED**.

---

[1] In the Amended Complaint, Plaintiff also names the following individuals and entities as defendants: Mark Line Industries, LLC ("Mark Line"); Mark Line Holdings, LLC ("Mark Line Holdings"); Mosaic Capital Group, LLC ("Mosaic Capital"); Dignicare Senior Management, LLC ("Dignicare") (together, with MCG Cane Bay, BMB-MCG, BMB Investments, and BOMA the "affiliated entities"); Paul Mascia; Christopher Remke; and Joseph Blockno. Default has been entered against Mosaic Capital, and the other named entities or individuals have not moved for dismissal of the Amended Complaint.

1

I.  **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a New York Corporation with a principal place of business in Asbury Park, New Jersey, that acquires and develops real property. Amended Complaint ("Am. Compl."), ¶ 1. Mark Line, a limited liability company ("LLC"), is a custom fabricator of modular units and buildings, and its principal place of business is located in Indiana. *Id*. ¶ 2. The other defendant entities are affiliated with Mark Line and also maintain their principal places of business outside of New Jersey, in Florida, Utah, or Minnesota. *Id*. ¶¶ 2-10. Moreover, the individual defendants, all of whom served in a corporate capacity at either Mark Line or an affiliated entity, do not reside in New Jersey. *Id*. ¶¶ 11-15.

As alleged in the Amended Complaint, on January 13, 2016, Linus entered into a Manufacturer's Development Agreement ("MDA") with Mark Line. *Id*. ¶ 22. Pursuant to its terms, Linus tendered $37,125 in exchange for Mark Line agreeing to produce design documents for modular units. *Id.* Linus intended to utilize those documents in connection with the development of a mixed-use building, including forty-eight residential units, in Asbury Park, New Jersey (the "Project"). *Id*. ¶¶ 21-22.

On October 7, 2016, Linus entered into an additional contract with Mark Line (the "Agreement"), for the production and purchase of modular units for the Project. *Id*. ¶ 23. According to Plaintiff, Mr. Remke and Mr. Blockno, as the "Manager, Director, Principal, and/or President" of Mark Line, negotiated the terms of the Agreement. *Id*. ¶¶ 11, 13, 24. Pursuant to Paragraph 35 of the contract, Mark Line was required to secure Performance and Payment Bonds ("Bonds") in order to guarantee its obligations under the Agreement and protect Linus's interests. *Id*. ¶¶ 24-25. The Bonds also served as a prerequisite to Linus's obligation to tender a

20% deposit in the amount of $790,000, the payment of which was allegedly necessary for Mark Line to purchase Project materials. *Id.* ¶¶ 26-27.

On October 12, 2016, notwithstanding the receipt of Linus's deposit, Plaintiff alleges that Mark Line failed to obtain the Bonds. *Id.* ¶ 30. In fact, according to Plaintiff, Mark Line did not possess such an ability when it executed the Agreement, because it had a negative cash flow and insufficient funds. *Id.* ¶ 32. In that connection, Mark Line allegedly required Linus's deposit for the purpose of covering payroll, as opposed to the purchase of materials for the Project. *Id.* ¶ 33. On March 24, 2017, Linus ultimately terminated the Agreement, as a result of Mark Line's alleged failure to obtain the Bonds and, in turn, demanded the immediate reimbursement of the $790,000 deposit and initial $37,125 payment. *Id.* ¶ 39. However, Mark Line allegedly refused to comply with these requests. *Id.* ¶ 40.

Moreover, Plaintiff alleges that from 2016 through 2017, Mark Line transferred "for little or no consideration" significant sums of money to its corporate parents and other related entities, including: (a) $28,000 to BMB Investments and BMB-MCG in October of 2016; (b) $770,000 to Mosaic Capital in 2016 and 2017; (c) $130,000 to Dignicare in 2016; (d) $390,000 to Earth Trades in March and April of 2016; (e) $100,000 to Mosaic Development Corp. in the fall and winter of 2016; and (f) $304,000 to MCG Cane Bay in 2016 and 2017. *Id.* ¶ 43(a-g). According to Plaintiff, these transfers violated Mark Line's Operating Agreement,[2] and, as a consequence, it became undercapitalized and "unable to satisfy [the] bonding condition" under the terms of the Agreement. *Id.* ¶¶ 53-54. Plaintiff alleges that, at the direction of Mr. Reimann and Mr. Blockno,

---

[2] Specifically, Plaintiff alleges that Mark Line's Operating Agreement only permitted the distribution of net cash from operations, defined as "the gross proceeds less portion used to pay expenses, debt, payroll, capital expenses," to its sole member, Mark Line Holdings. Am. Compl., ¶ 47.

Mark Line manipulated its financial statements in order to appear financially sound and sufficiently liquid. *Id*. ¶ 60.

On May 24, 2017, as a result of these events, Plaintiff filed the instant action. The thirteen-count Amended Complaint asserts the following claims against the corporate and individual defendants: (1) breach of contract; (2) conversion; (3) unjust enrichment; (4) breach of the duty of good faith and fair dealing; (5) alter ego; (6) piercing the corporate veil; (7) fraudulent inducement and misrepresentation; (8) negligent misrepresentation; (9) fraud pursuant to the New Jersey Consumer Fraud Act; (10) accounting of funds; (11) fraudulent transfers; (l2) breach of fiduciary duties; and (13) corporate waste.

Currently, MCG Cane Bay, BMB-MCG, BMB Investments, BOMA, as well as Mr. Reimann and Mr. Brown, separately move for dismissal. The moving defendants, among other things, challenge this Court's lack of personal jurisdiction over them. Plaintiff has opposed the motions.

## II. DISCUSSION

### A. Standard of Review

To withstand a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over the moving defendant by a preponderance of the evidence. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *see Cerciello* v. *Canale*, 563 F. App'x 924, 925 n.1 (3d Cir. 2014) (noting that the plaintiff "'bears the burden to prove, by a preponderance of the evidence,' that personal jurisdiction is proper.") (citation omitted). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the

plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, to meet its burden, the plaintiff must establish "jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction." *Id.* at 101 (citation and internal quotation marks omitted). If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016); *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see* Fed. R. Civ. P. 4(e). In assessing whether personal jurisdiction exists, the Court's analysis is twofold: "[t]he court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process." *Display Works*, 182 F. Supp. at 172. "Since New Jersey's long-arm statute allows 'the exercise of personal jurisdiction to the fullest limits of due process,' [the Court must] 'look to federal law for the interpretation of the limits on in personal jurisdiction.'" *Malik v. Cabot Oil & Gas Corp.*, 710 F. App'x 561, 563 (3d Cir. 2017) (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998)).

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tires Operations*,

5

*S.A. v. Brown*, 564 U.S. 915, 923 (2011). In *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945), the Supreme Court held that a state may authorize its courts to exercise personal jurisdiction over a nonresident defendant if that defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316 (citation omitted). "Following *International Shoe*, 'the relationship among the defendant, the forum, and the litigation . . . became the central concern of the inquiry into personal jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Relevant here, a court may impute the contacts of a subsidiary corporation to a foreign parent corporation for the purpose of exercising specific jurisdiction, if the subsidiary corporation is merely operating as the parent corporation's alter ego, such that the "independence of the separate corporate entities [may be ] disregarded."[3] *Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 76 (3d Cir. 2006) (citations omitted); *see also Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004).

B.   **Piercing the Corporate Veil**

---

[3]   For specific jurisdiction purposes, alter ego and veil-piercing are typically alleged in order to impute the forum contacts of a subsidiary corporation to a foreign parent corporation, or vice versa. Here, in order to impute Mark Line's contacts to, and establish jurisdiction over, thirteen defendants that comprise of eight related entities and five corporate officials, Plaintiff seeks to pierce the corporate veil. However, Plaintiff does not allege that all of the defendant entities and individuals served as either a parent corporation or controlling shareholder over Mark Line, as is traditionally required under alter ego and veil-piercing theories. In fact, the affiliation between Mark Line and the related entities and individuals is not entirely clear based on Plaintiff's allegations in the Amended Complaint. And, I question whether personal jurisdiction can be obtained by way of alter ego in the circumstances alleged by Plaintiff. Nevertheless, the LLC defendants do not dispute personal jurisdiction on these grounds, nor do I need to decide this issue, because Plaintiff has failed to allege a plausible basis for veil-piercing, as further discussed *infra*.

As a threshold issue, the moving defendants contend that the Court lacks personal jurisdiction over them. In support, the moving defendants have provided sworn certifications which demonstrate that they are neither incorporated nor maintain a principal place of business in the State. Nor does this action, according to the moving defendants, arise from their continuous and systematic contacts in New Jersey—they have never advertised, engaged in, or solicited business in the State. Plaintiff does not directly dispute these allegations, but rather contends that this Court may exercise personal jurisdiction, on the basis of its alter ego and veil-piercing claims. Plaintiff maintains that Mark Line's contacts with the State, *i.e.*, executing a contract with Linus, a New Jersey entity, for the production of modular units in New Jersey, may be imputed to the moving defendants for specific jurisdiction purposes. In that connection, because the sufficiency of Mark Line's contacts with New Jersey is not challenged, the jurisdictional inquiry, here, is confined to the issue whether Plaintiff's veil-piercing and alter ego claims provide sufficient grounds for exercising personal jurisdiction over the moving defendants.

Plaintiff's veil-piercing and alter ego theories arise solely from a series of transactions, occurring in 2016 and 2017. Am. Compl. ¶¶ 86-106. Specifically, during the course of this period, Plaintiff alleges that Mark Line "freely transferred" $1.5 million in assets to the affiliated entities, "without reasonable or adequate consideration," and, in turn, Mark Line was rendered undercapitalized, insolvent, and without the financial ability to obtain Performance and Payment Bonds under the Agreement. Plaintiff's Brief in Opposition to Motion to Dismiss ("Pl.'s Opp."), at 16, 26. In that regard, having become financially dependent upon the affiliated entities as a result of the disputed transfers, Plaintiff contends that the affiliated entities served as the alter

egos for Mark Line, and, as such, are ultimately liable for Mark Line's inability to perform its contractual obligations. *Id.*

The Court's veil-piercing inquiry begins by first determining which state's law to apply in resolving the instant dispute. *See United States ex rel. Pilecki-Simko v. Chubb Inst.*, No. 06-3562, 2010 U.S. Dist. LEXIS 27187, at *38 (D.N.J. Mar. 22, 2010) (noting that "veil-piercing is a state-law claim"). To that end, the New Jersey Limited Liability Company Act ("NJLLCA") expressly provides as follows: "[t]he law of the state . . . under which a foreign limited liability company is formed governs . . . the liability of a member as member and a manager as manager for the debts, obligations, or other liabilities of the company." N.J.S.A. 42:2C-57(a)(2). However, courts within this district have also applied the law of "the state that has the most significant connection with the parties and the transaction." *See*, *e.g.*, *Mark IV Transp. & Logistics, Inc. v. Lightning Logistics, LLC*, No. 09-6480, 2014 U.S. Dist. LEXIS 172588, at *8 (D.N.J. Dec. 12, 2014); *Torus United States Servs., Inc. v. Hybrid Ins. Agency, LLC*, No. 14-01630, 2015 U.S. Dist. LEXIS 144025, at *15 n.9 (D.N.J. Oct. 22, 2015). Thus, based on these considerations, Plaintiff's veil-piercing claim may be governed by either the laws of Florida and Utah, wherein the moving defendants maintain principal places of business, or New Jersey, wherein contractual performance was due.

In that regard, while the moving defendants argue that the NJLLCA mandates an application of Florida or Utah law, they, nevertheless, concede that an application of New Jersey law will ultimately lead to the same outcome. Indeed, according to the moving defendants, and not disputed by Plaintiff, New Jersey's veil-piercing framework is substantially similar to the veil-piercing framework under the laws of Florida and Utah. Therefore, because Plaintiff's success on this motion is not contingent upon an application of Florida, Utah, or New Jersey law,

8

the Court proceeds to apply the laws of New Jersey in determining whether Plaintiff has alleged a plausible veil-piercing claim. *See, e.g., Torus United States Servs., Inc.*, 2015 U.S. Dist. LEXIS 144025, at *15 n.9 (applying New Jersey over Connecticut law in determining whether the defendants' corporate veil may be pierced, because the veil-piercing laws of New Jersey and Connecticut are "substantially the same[.]").

Pursuant to the laws of New Jersey, it is axiomatic that "a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *State Dept. Of Environmental Protection v. Ventron Corp.*, 94 N.J. 473, 500 (1983); *Lyon v. Barrett*, 89 N.J. 294, 300 (1982). In addition, piercing the corporate veil is not a mechanism by which legal liability is imposed *per se*, but rather an equitable remedy designed to remedy a fundamental unfairness perpetrated under the guise of the corporate form. *Id*. Thus, in the absence of extraordinary circumstances, such as fraud or injustice, a court will generally decline to pierce the corporate veil. *Id*.; *Lyon*, 89 N.J. at 300. "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of showing that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div. 1996).

Specifically, in New Jersey and most other jurisdictions, two elements must be shown to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quotations and citations omitted). However, even in instances where one individual shareholder or director dominates the corporate entity,

9

"liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law." *Ventron*, 94 N.J. at 500-501.

In determining whether a unity of interest and ownership exists under the first prong, the Third Circuit has applied six non-binding factors to guide this inquiry: [1] gross undercapitalization . . . ; [2] the failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (citations omitted). With respect to the second element, a plaintiff need not prove common law fraud but instead demonstrate that the defendants, *via* the corporate form, perpetrated "a fraud, injustice, or the like," a less exacting standard. *Group Properties*, 2005 U.S. Dist. LEXIS 31860, at *3.

Here, as a preliminary matter, Plaintiff attempts to pierce Mark Line's corporate veil in order to impose liability upon a total of thirteen defendants, including eight LLC entities and five corporate officials.[4] But, aside from merely identifying the previously referenced transfers, Plaintiff does not specifically allege facts as to each of the defendants that demonstrate how each

---

[4] As previously indicated, veil-piercing occurs, and the corporate form is disregarded, when a subsidiary "is so dominated by its corporate parent as to be the parent's alter ego." *In re Owens Corning*, 419 F.3d 195, 206 (3d Cir. 2005). While veil-piercing is not confined to this scenario, Plaintiff has not referenced, nor has the Court found, any case law or authority wherein the "extreme" remedy of veil-piercing was applied in such an extensive manner, so as to impose liability upon more than thirteen related entities and individuals, based on a mere corporate affiliation. Nevertheless, as stated, to the extent that the doctrine could be applied within this context, the Court finds that Plaintiff has failed to allege facts in support of a plausible veil-piercing and alter ego claim. *See, infra*.

entity or individual purportedly controlled or dominated Mark Line such that it failed to assume a separate corporate identity. Rather, Plaintiff, in a broad-brush fashion, alleges that Mark Line transferred a total of $1.5 million in assets to the affiliated entities, during the period of 2016 and 2017. Those transfers, Plaintiff maintains, demonstrate a complete disregard of corporate formalities, because they violated Mark Line's Operating Agreement, and, in addition, they ultimately rendered Mark Line undercapitalized, insolvent, and unable to perform its contractual obligations pursuant to the terms of the Agreement. I will address each of Plaintiff's contentions in turn.

First, Plaintiff contends that Mark Line was "grossly undercapitalized," because the disputed transfers resulted in its insolvency. Pl.'s Opp., at 12. However, Plaintiff conflates the issue of undercapitalization with the issue of insolvency in support of its veil-piercing allegations. Indeed, while there is a "substantial overlap," the Third Circuit has explained that these two concepts are often confused and, for veil-piercing purposes, "mere insolvency is distinct from under capitalization." *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003); *see*, 1 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.33 (2002) (a "corporation that was adequately capitalized when formed, but which subsequently suffers financial reverses is not undercapitalized"). In that connection, in order to demonstrate that an entity is undercapitalized, a plaintiff must sufficiently allege that it was inadequately capitalized "at the time of its organization." *Lutyk*, 332 F.3d at 197 (quotations and citations omitted). This inquiry is "highly factual and may vary substantially with the industry, company, size of the debt, account methods employed, and like factors." *Id.* (citing *Matter of Multiponics, Inc.*, 622 F.2d 709, 717 (5th Cir. 1980)) (quotations omitted).

More to the point, Plaintiff does not allege any facts with respect to the appropriate level of capital that, considering its size, Mark Line required in order to operate as a successful business within its industry. Therefore, having failed to provide any information in this regard, Plaintiff has not sufficiently demonstrated that Mark Line was undercapitalized at the time of its formation. *Las Vegas Sands Corp. v. ACE Gaming, LLC*, 713 F. Supp. 2d 427, 445 (D.N.J. 2010) ("[T]here is no record evidence that [the defendant] was undercapitalized when it was formed in 2003. Its financial health in 2006 does little to answer the question of whether the corporation was established to defraud its creditors or [for] [an] other improper purpose[.]") (alterations in original); *Local Union No. 98, IBEW v. Garney Morris, Inc.*, No. 03-5272, 2004 U.S. Dist. LEXIS 9528, at *7 (E.D. Pa. May 21, 2004) (Refusing to find that the defendant was undercapitalized where "[t]he plaintiffs have made no suggestion that the company was inadequately capitalized at its inception."). Accordingly, these grounds fail to provide a basis for veil-piercing.

Second, Mark Line's insolvency, which allegedly occurred as a result of the disputed transfers to the affiliated entities, also fails to justify Plaintiff's alter ego and veil-piercing claims. Indeed, Plaintiff has not sufficiently alleged that Mark Line operated as a sham or a dummy corporation, but rather maintains, in a conclusory fashion, that the affiliated entities and the individual defendants "were part of the scheme to remove funds from Mark Line in order to defraud Linus." Pl.'s Opp., at 17-18. In addition, Plaintiff avers that the alleged fraudulent transfers violated Mark Line's own Operating Agreement, that they occurred while the company was in financial distress, and there exists no evidence from which to conclude that Mark Line ultimately received "any legitimate consideration" from the affiliated entities in return. *Id.* at 18, 22. The moving defendants argue, however, that the transfers were permissible "affiliate

advances" which were recorded on its balance sheets, and Plaintiff's arguments with respect to the financial health of Mark Line, at the time of the disputed transfers, are based on an inaccurate interpretation of its financial statements.

Here, although Plaintiff argues that Mark Line fraudulently diverted its assets on the basis of its alleged financial distress and disregard of its own Operating Agreement, Plaintiff cannot solely rely on the disputed transfers, in of themselves, for the purpose of piercing the corporate veil. Rather, Plaintiff must plead specific facts with respect to how the affiliated entities and individuals allegedly controlled or dominated Mark Line. *Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 507 (D.N.J. 2009) ("To succeed in piercing the corporate veil, a plaintiff must allege that the parent completely dominate[s] the finances, policy, and business practice with respect to the subject transaction" to such a degree that the subsidiary has "no separate mind, will, or existence of its own.") (citation omitted); *Katzir's Floor & Home Design, Inc. v. M-MLS.COM*, 394 F.3d 1143, 1149 (9th Cir. 2004) ("The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory.").

In that regard, Plaintiff purports to demonstrate the requisite level of control or dominance by arguing as follows: (1) an executive overlap between Mark Line and the affiliated entities existed, as Mr. Reimann, acting on the behalf of Mr. Brown, allegedly served in a managerial capacity over both Mark Line and the affiliated entities; and (2) the corporate structure of the affiliated entities reveals that they are "interrelated." Pl.'s Opp., at 13, 17-18. However, Plaintiff's allegations are insufficient for the purpose of showing an alter ego relationship between Mark Line and the affiliated entities, nor do they provide a proper basis for imposing personal liability upon Mr. Reimann and Mr. Brown.

Indeed, although Plaintiff alleges that, while "Reimann served as the President of Mark Line Industries[,]" certain entities "over which he served as sole Manager" received transfers, it is well-established that "common ownership and common management alone" are insufficient for veil-piercing purposes. *RNC Sys. v. MTG Holdings, LLC*, No. 15-5239, 2017 U.S. Dist. LEXIS 44209, at *14 (D.N.J. Mar. 27, 2017); *Preferred Real Estate Invs., LLC v. Lucent Techs., Inc.*, No. 07-5374, 2009 U.S. Dist. LEXIS 51805, at *11 (D.N.J. June 19, 2009) (refusing to pierce the corporate veil, although the plaintiff alleged "common ownership" and a "common place of business"); *In re Phillips Petroleum Sec. Litigation*, 738 F. Supp. 825, 838 (D. Del. 1990) ("The separate corporate existence will not be set aside merely on a showing of common management or whole ownership."). To be clear, Plaintiff has not alleged any other facts to support its veil piercing theory against Mr. Reimann and Mr. Brown aside from their ownership and/or management of the corporate entities, and their ability to effectuate transfers of funds and liabilities between them.[5] These allegations are simply not sufficient.

In addition, Plaintiff's contentions with respect to the managerial and ownership structure of Mark Line and the affiliated entities do not account for their designations as LLCs. In fact, as LLCs, these entities are "deliberately" provided with "organizational flexibility," and, in that same vein, need not function as a formally run corporation. *COTY US LLC v. 680 S. 17th St. LLC*, No. 122-13, 2015 N.J. Super. Unpub. LEXIS 2878, at *50 (App. Div. Feb. 26, 2015); *Mark IV Transp. & Logistics, Inc.*, 2014 U.S. Dist. LEXIS 172588, at *16 ("In the realm of LLCs . . . informality of organization and operation is both common and desired.") (quotations and citation omitted); *Woolery v. Matlin Patterson Global Advisers, LLC*, No. 2013 U.S. Dist. LEXIS 57790,

---

[5] Aside from merely identifying their positions as a "Manager, Director, Principal, and/or President" of Mark Line or an affiliated entity, Plaintiff also does not plead any substantive facts with respect to Paul Mascia, Christopher Remke, and Joseph Blockno, which demonstrate how they allegedly controlled or dominated Mark Line.

at *14-15 (D. Del. April 23, 2013) ("It is true that an LLC does not necessarily have a board. It is also true that an LLC is a flexible and highly customizable business entity."). Moreover, Plaintiff does not dispute that Mark Line maintained its own financial statements, Operating Agreement, hired employees, and filed separate tax documents. Thus, Plaintiff's allegations do not adequately demonstrate that Mark Line functioned as a dummy or shell corporation.

Third, although Plaintiff contends that the disputed transfers constitute a disregard of corporate formalities, the pertinent law in New Jersey provides: "[t]he failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities is not a ground for imposing liability on the members or managers for the debts, obligations, or other liabilities of the company."[6] N.J.S.A. § 42:2C-30. Notably, while these statutory protections do not categorically preclude piercing the veil of an LLC, Plaintiff's allegations with respect to the alleged misuse of funds do not rise to a level which demonstrates a failure to adhere to corporate formalities. Nevertheless, even if the disputed transfers warranted such a finding, this circumstance, alone, would not justify piercing the corporate veil—indeed, Plaintiff has failed to demonstrate any of the additional factors under the veil-piercing analysis. *See Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 267 (D. Del. 1989) ("[T]he [defendant] entities were less than steadfast in their observation of corporate formalities. Nevertheless, these facts standing alone are insufficient for the alter ego theory to operate to pierce the corporate veil."); *COTY US LLC*, No. 122-13, 2015 N.J. Super. Unpub.

---

[6]  For purposes of completeness, the Court notes that the laws in Florida and Utah in connection with the adherence of formalities by LLCs are substantially similar to the laws in New Jersey. Indeed, in both Florida and Utah, "[t]he failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is not a ground for imposing liability on a member or manager of the limited liability company for a debt, obligation, or other liability of the limited liability company." U.C.A. § 48-3-304; F.S.A. § 605.0304.

15

LEXIS 2878, at *50 (finding that "the equitable remedy of piercing the veil is applicable to a LLC, as long as it is not based solely on a LLC's failure to follow formalities.").

At best, Plaintiff's allegations demonstrate a misuse or mismanagement of corporate funds that ultimately resulted in Mark Line's inability to sustain its business operations. However, these situations frequently occur within the corporate realm, and, with nothing more, cannot constitute the "specific, unusual circumstances" which are required for veil-piercing purposes. *Lutyk*, 332 F.3d at 197 ("Companies commonly become insolvent, then bankrupt; piercing the corporate veil is an exception reserved for extreme situations, rather than the rule."); *Zubik v. Zubik*, 384 F.2d 267, 269 (3d Cir. 1967). Importantly, the "discretionary acts of an informally run LLC which ultimately resulted in [the] inability" to satisfy a financial obligation, is not within the contemplation of the veil-piercing framework, nor does it constitute the type of harm which the pertinent law was intended to redress. *See Mark IV Transp. & Logistics, Inc.*, 2014 U.S. Dist. LEXIS 172588, at *14-21, *conf'd* 705 F. App'x. 103 (3d Cir. 2017) (refusing to pierce the corporate veil where the plaintiff argued that the defendant LLC was "undercapitalized because of [its] alleged misuse of funds, which arose out of [its] failure to adhere to corporate formalities."). Therefore, having weighed the pertinent factors, the Court finds that Plaintiff has failed to allege a plausible basis for piercing the corporate veil.[7]

Accordingly, because Plaintiff has failed to adequately allege its claim of alter ego or veil-piercing, the Court has no basis to exercise specific jurisdiction over the moving defendants. Therefore, because personal jurisdiction is lacking, the parties' remaining arguments with respect to the sufficiency of certain claims pled in the Amended Complaint need not be addressed.

---

[7] Although Plaintiff further alleges that, on various occasions, some of the affiliated entities improperly assumed Mark Line's liabilities, that additional allegation, on balance, is insufficient to pierce the corporate veil for the purpose of imposing liability upon thirteen separate but affiliated entities and individuals.

Lastly, should additional discovery reveal information which demonstrates the requisite level of control or dominance between Mark Line and the affiliated entities and individuals, Plaintiff may move to amend the Complaint before the Magistrate Judge.

## III. CONCLUSION

For the foregoing reasons, the moving defendants' motions to dismiss are **GRANTED**. All claims against the moving defendants are dismissed without prejudice for lack of personal jurisdiction.

/s/ Freda L. Wolfson  
Freda L. Wolfson  
United States District Judge